UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                          :

UNITED STATES OF AMERICA,            :

                                          :

                    Plaintiff,         :

                                          :         19 Civ. 9578 (JPC)

          -v-                    :

                                          :         OPINION AND

                                          :           ORDER

WILLIAM DOONAN and WILLIAM DOONAN AND    :
ASSOCIATES, INC., *doing business as* WILLIAM    :
DOONAN, ESQ.,                              :

                                          :

                    Defendants.     :

                                          :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      In May 2017, William Doonan was sentenced, following his guilty plea, to a term of incarceration of twenty-four months for willfully helping prepare fraudulent tax documents, in violation of 26 U.S.C. § 7206(2), and corruptly trying to obstruct the government from administering the federal tax laws, in violation of 26 U.S.C. § 7212(a).  In this action, the United States of America (the "Government") seeks injunctive relief against Doonan and the company he operates, William Doonan and Associates, Inc. ("WDA"), that, among other things, would permanently enjoin them from preparing any tax returns that are not their own and from violating the federal tax laws.  For the reasons that follow, the Court grants the Government's motion for summary judgment and enters a permanent injunction.

## I. Background

### A. Facts in Dispute

Before discussing the facts of this case, the Court first addresses what facts are in dispute. Local Civil Rule 56.1(a) requires a party moving for summary judgment to include "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Loc. Civ. R. 56.1(a).  Rule 56.1(b), in turn, requires the party opposing such motion to respond with "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Loc. Civ. R. 56.1(b). While the Government, as the movant, has complied with Rule 56.1(a), Doonan has not submitted his own correspondingly numbered statement in response to the Government's Rule 56.1 statement, nor has he submitted his own Rule 56.1 statement.

Instead, Doonan submitted a sur-reply brief that purported to raise genuine disputes of material fact.  *See* Dkt. 97.  Doonan included a letter with that filing asking the Court to grant him special solicitude, as a *pro se* litigant, to respond.  *See* Dkt. 98.  The Court denied Doonan's request, and as such it will not consider his sur-reply in deciding this motion.  Dkt. 100.  Still, even though Doonan as a disbarred attorney is not entitled to receive special solitude, *see United States v. Pierce*, 649 F. App'x 117, 118 n.1 (2d Cir. 2016), and even though "[p]ro se litigants are . . . not excused from meeting the requirements of Local Rule 56.1," *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (citation omitted), the Government does not appear to object to the Court's exercise of its discretion to consider Doonan's arguments in his opposition brief that reference evidence responding to the Government's Rule 56.1 statement.  *See* Dkt. 95 ("Reply")

at 3.  Accordingly, "the Court, in its discretion, will consider the opposition brief as opposition to [the Government's] Rule 56.1 Statement." *Brooks v. Westchester Cty. Jail*, No. 19 Civ. 10901 (PMH), 2021 WL 3292229, at *1 n.4 (S.D.N.Y. Aug. 2, 2021).

The Court therefore begins with addressing what pieces of evidence Doonan tries to dispute in opposing the Government's motion for summary judgment.  *See* Dkt. 94 ("Opposition") at 2. The first item that Doonan challenges is a declaration sworn and signed by Lori Dixon, a Revenue Agent for the Internal Revenue Service ("IRS"), which the Government filed in support of its motion.  *See* Dkt. 92 ("Dixon Decl.").  Although not entirely clear, Doonan seems to contend either that the Court should not consider the Dixon Declaration or that there are factual disputes about the content of that declaration because (1) "[j]ust about every example of what IRS Revenue Agent Lori Dixon says is fraudulent," (2) Doonan did not have an opportunity to cross-examine Revenue Agent Dixon, and (3) the declaration is "total unaltered hearsay."  Opposition at 2, 12.

In considering a motion for summary judgment, a court may rely on an affidavit or declaration if it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *accord Seife v. Food & Drug Admin.*, No. 17 Civ. 3960 (JMF), 2019 WL 1382724, at *1 (S.D.N.Y. Mar. 27, 2019) ("[A] district court may rely on an affidavit or declaration when deciding a motion for summary judgment only if it is 'made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4))).  A court disregards any statements in an affidavit or declaration that do not comply with Rule 56(c)(4).  *See Seife*, 2019 WL 1382724, at *1.

3

Applying these principles, the Court finds that it can properly consider the Dixon Declaration and that Doonan has not properly disputed any facts set forth therein, except for statements attributed to a third-party witness, as discussed shortly.  First, Doonan cannot create factual disputes in the declaration by nakedly attacking Revenue Agent Dixon's motivations or claiming that she is lying without pointing to any evidence supporting the claim.  To refute a fact, "the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (cleaned up).

Second, and despite his suggestion otherwise, Doonan did have the opportunity to question Revenue Agent Dixon under oath.  Doonan chose to not depose Revenue Agent Dixon during discovery for this case, despite the Government offering to schedule a deposition.  *See* Dkt. 71 at 26 (Doonan telling Magistrate Judge Katharine H. Parker, to whom the case was referred for general pretrial supervision, that he was "not deposing Lori Dixon" and Judge Parker then confirming with Doonan that he did not wish to depose Revenue Agent Dixon).

Third, Doonan has identified no specific parts of the Dixon Declaration that put forth evidence that would count as inadmissible hearsay.  And nearly all the declaration does not qualify as hearsay.  The declaration does include, however, statements made by one of Doonan's former clients, Michael Leonard, to Revenue Agent Dixon during an August 10, 2016 interview.  *See* Dixon Decl. ¶¶ 17-18.  Revenue Agent Dixon reported that, during this interview, Leonard discussed fraudulent tax returns that Doonan prepared on his behalf.  *Id.*  When the Government tried to depose Leonard, he invoked his Fifth Amendment right against self-incrimination.  *See* Jacob Decl., Exh. C at 3.  Although Leonard's statements to Revenue Agent Dixon appear to be against Leonard's propriety or pecuniary interests, *cf.* Fed. R. Evid. 804(b)(3), the Court declines

to consider them at this stage.  Even though a witness who "properly invokes his Fifth Amendment right against self-incrimination" can be considered "unavailable for the purposes of Rule 804[]," *United States v. Miller*, 954 F.3d 551, 561 (2d Cir. 2020), the Government has not shown that Leonard has been "exempted from testifying" by a judicial "ruling that [the] privilege applies" or that he has "refuse[d] to testify . . . despite a court order to do so," Fed. R. Evid. 804(a)(1), (a)(2). He therefore is not considered unavailable under Federal Rule of Evidence 804(a) at this stage. Thus, the Court will consider the Dixon Declaration undisputed, except it will disregard the portions of the declaration that recounts Leonard's statements to Dixon.

Doonan also claims that there are facts in dispute about the conduct that was the basis for his criminal conviction.  Opposition at 11-14.  As detailed below, Doonan pleaded guilty to willfully aiding and assisting in the preparation of false or fraudulent documents in matters arising under the internal revenue laws, in violation of 26 U.S.C § 7206(2), and corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). *United States v. Doonan*, No. 16 Cr. 732 (VSB) (S.D.N.Y.), Dkts. 7, 15; Dixon Decl., Exh. F ("Plea Tr.") at 7-8.  Now, however, Doonan claims that there are disputed facts about that criminal conduct because the IRS investigator who worked on his criminal case "was out TO GET WILLIAM CHRISTOPHER DOONAN," that he is innocent of those crimes, and that he only pleaded guilty to avoid collateral consequences associated with a post-trial conviction.  Opposition at 11, 14, 21-23.

But Doonan never sought to withdraw his guilty plea, he did not appeal his conviction, and he has not moved to vacate his conviction.  *See generally Doonan*, No. 16 Cr. 732 (VSB).  It is "well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."  *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978).  Thus,

there are no factual disputes relating to the conduct underlying Doonan's conviction for violating sections 7206(2) and 7212(a).

Lastly, Doonan baldly asserts "that there are many, many facts in dispute" without pointing to any evidence suggesting that to be the case. Opposition at 11; *see also id.* at 24. But again, to refute a fact, "the non-moving party . . . may not rely on conclusory allegations or unsubstantiated speculation." *Great Am. Ins. Co.*, 607 F.3d at 292 (cleaned up). Doonan's vague, general, and conclusory statements about factual disputes existing are insufficient to create a material dispute of fact.

In sum, the Opposition fails to reference any evidence in response to the Government's Rule 56.1 statement to adequately dispute any fact, except for evidence surrounding Leonard's statements to Dixon.

## B.    Facts[1]

The Court now turns to the facts of this case. Doonan served as the Chief Executive Officer ("CEO") of WDA, a company that provided tax preparation services to tax-payer customers in the greater New York City area. Dixon Decl. ¶ 4, Exh. A at 1; Pl. 56.1 Stmt. ¶ 1. From at least 2009 to 2016, he operated WDA and prepared tax returns for its customers. Dixon Decl. ¶ 7, Exh. E ("Information") at 1; Pl. 56.1 Stmt. ¶ 2. Between the 2012 and 2016 tax processing years, Defendants filed over 23,000 tax returns on behalf of others. Dixon Decl. ¶¶ 8-9; Pl. 56.1 Stmt. ¶ 15. Over 16,000 of those returns included claimed deductions for unreimbursed employee expenses. Dixon Decl. ¶ 9; Pl. 56.1 Stmt. ¶ 15.

---

[1] These facts are mainly drawn from the Government's statements of material facts under Local Civil Rule 56.1, Dkt. 90 ("Pl. 56.1 Stmt."), the declarations including attached exhibits filed by the Government, and the Opposition. As discussed above, there are no genuine factual disputes about any of the facts discussed in this section, except that the Court will not consider evidence surrounding Leonard's statements to Dixon.

On November 1, 2016, Doonan waived indictment and pleaded guilty to both counts of an Information filed by the Government for conduct involving his tax preparation business. *Doonan*, No. 16 Cr. 732 (S.D.N.Y.), Dkts. 7, 15; Plea Tr. at 7-8; Pl. 56.1 Stmt. ¶¶ 3, 7.  Count One charged Doonan with willfully aiding and assisting in the preparation of false or fraudulent documents in matters arising under the internal revenue laws, in violation of 26 U.S.C § 7206(2), and Count Two charged him with corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).  Information at 1-6; Pl. 56.1 Stmt. ¶ 4. The Information alleged that, from 2009 until April 2013, Doonan "corruptly obstruct[ed] and impede[d] . . . the due administration of the internal revenue laws of the United States by knowingly preparing and causing the preparation and filing of Federal Tax Returns for certain [c]lients . . . that included . . . wholly fictitious and inflated itemized deductions and business expenses, thereby fraudulently lowering the tax liabilities of these [c]lients as reported to the IRS." Information at 6; Pl. 56.1 Stmt. ¶ 5.  The Information also alleged that Doonan had willfully and knowingly aided and assisted in preparing and presenting federal tax returns that included "fabricated and/or falsely overstated items such as medical and dental expenses . . . job expenses and certain miscellaneous deductions, and Schedule C business income and losses."  Information at 4; Pl. 56.1 Stmt. ¶ 6.  In short, the Information alleged that Doonan prepared tax returns with false deductions that reduced his clients' taxable income, which caused his clients to underpay their taxes. *See* Information at 4, 6.

During his plea allocution on November 1, 2016, Doonan admitted that from 2009 to April 2013 he had "knowingly prepared and caused the preparation of filing federal false tax returns," including "[w]holly fictitious, inflated itemized deductions and business expenses."  Plea Tr. at 17; Pl. 56.1 Stmt. ¶ 8.  He also admitted that in 2011 and 2012, when preparing tax returns, he had

"put down more expenses than some people had," and that he knew that, by falsifying those expenses, he was "going to get those people greater refunds or have them pay lesser in taxes than they should." Plea Tr. at 16; Pl. 56.1 Stmt. ¶ 9. Doonan further acknowledged that he knew, when preparing and filing those false tax returns, what he was doing was wrong. Plea Tr. at 17.

Sentencing occurred before the Honorable Vernon S. Broderick on May 5, 2017. *See* Dixon Decl., Exh. G ("Sentencing Tr."); Pl. 56.1 Stmt. ¶ 10. At sentencing, Judge Broderick found that Doonan was "responsible for a tax loss of approximately $1.8 million." Sentencing Tr. at 11; *see also* Pl. 56.1 Stmt. ¶ 12. Doonan insisted at his sentencing that there came a point when he stopped preparing fraudulent tax returns:

> When I was first confronted with how many times I did it, I was like what? I did that? I committed a felony? Oh, my God. I'm going to be disbarred? And it never dawned on me until that moment.
>
> As your Honor knows, since then, '13, '14, '15, '16, I have been investigated and it stopped. As soon as I realized, it stopped, which is, again, a poor excuse, I suppose.

Sentencing Tr. at 37; Pl. 56.1 Stmt. ¶ 10. And Doonan acknowledged again at this sentencing hearing the illegality of his conduct and accepted responsibility: "Boy, did I do wrong and I accept responsibility. There is no excuse for all of this. I am wholeheartedly sorry." Sentencing Tr. at 39; Pl. 56.1 Stmt. ¶ 10. Judge Broderick then sentenced Doonan to twenty-four months' imprisonment on each count, to run concurrently, and one year of supervised release. Sentencing Tr. at 52; *Doonan*, No. 16 Cr. 732 (VSB), Dkt. 21 ("Judgment") at 2; Pl. 56.1 Stmt. ¶ 11.

Besides the criminal case, the IRS also conducted a civil investigation of Defendants, focusing on the tax processing years between 2012 and 2016. Dixon Decl. ¶¶ 13, 16; Pl. 56.1 Stmt. ¶¶ 13-14. As part of the civil investigation, the IRS audited sixty-nine returns that Doonan prepared. Dixon Decl. ¶ 27; Pl. 56.1 Stmt. ¶ 27. Of those audited returns, fifty-four had an

understated tax liability.[2]  Dixon Decl. ¶ 28.  The average deficiency across all the tax returns was approximately $2,371 per return.  *Id.* ¶ 29; Pl. 56.1 Stmt. ¶ 28.

The IRS investigation also revealed that Defendants prepared and filed other 2015 federal income tax returns that claimed unreimbursed employee expenses.  Dixon Decl. ¶¶ 23-25, Exh. D at 4, 7, 10, 13, 16, 19, 22; Pl. 56.1 Stmt. ¶¶ 24-26.  Revenue Agent Dixon believed that the identified taxpayers were unlikely to have incurred many of the identified expenses.  Dixon Decl. ¶ 26; Pl. 56.1 Stmt. ¶ 26.  Consistent with Judge Broderick's estimated tax loss, the IRS assessed that it suffered millions of dollars in loss for tax processing years 2012 through 2016.  Dixon Decl. ¶ 31; Pl. 56.1 Stmt. ¶ 29.

## C.    Procedural History

The Government brought this action against Doonan and WDA on October 16, 2019.  Dkt. 1 ("Complaint").  The Complaint pleads three counts, seeking injunctions under 26 U.S.C. § 7407 (Count One), 26 U.S.C. § 7408 (Count Two), and 26 U.S.C. § 7402 (Count Three).  *Id.* ¶¶ 24-43. In addition to various injunctive relief, the Complaint requests that the Court find that Defendants "have repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6701" and have "repeatedly engaged in conduct that interfered with the enforcement of the internal revenue laws."  *Id.* at 9.  Doonan's attorney in his criminal prosecution waived service on behalf of both Doonan and WDA on or about October 22, 2019.  Dkt. 5.  No attorney, however, has entered an appearance on behalf of either Doonan or WDA.  Doonan answered the Complaint

---

[2] Again, outside generally challenging the Dixon Declaration, Doonan does not challenge that these audited returns had an understated tax liability.  He does, however, claim that at the time of the criminal case, he had "over 200 audits" of his clients' tax returns that had "resulted in a 'No change for my clients or a very little change' for my clients because the tax returns were honest, well documented, professional, non-fraudulent, containing non-frivolous deductions."  Opposition at 16.

on December 9, 2017, and also tried to file an answer on behalf of WDA.  *See* Dkt. 7 at 1.  Because WDA is a corporation and Doonan is a disbarred attorney, the Honorable Analisa Torres, to whom this case was previously assigned, struck the answer he attempted to file for WDA.  *See* Dkt. 26; *see, e.g.*, *McFarlane v. Harry's Nurses Registry*, No. 17 Civ. 6350 (PKC), 2020 WL 1643781, at *15 (E.D.N.Y. Apr. 2, 2020).  WDA has not otherwise responded to the Complaint or appeared in this case.

In January 2020, the Government moved for a preliminary injunction seeking an order barring Defendants from preparing tax returns during the pendency of this action.  *See* Dkts. 18-20.  On April 3, 2020, Judge Torres granted the Government's application, after determining that the Government had established the statutory and equitable standards for injunctive relief under 26 U.S.C. §§ 7407, 7408, and 7402(a).  *United States v. Doonan*, No. 19 Civ. 9578 (AT), 2020 WL 1659861, at *3-5 (S.D.N.Y. Apr. 3, 2020).  Judge Torres found "that Defendants continually and repeatedly engaged in conduct that is subject to criminal penalty under the Internal Revenue Code, subject to penalty under 26 U.S.C. § 6694(b), and which substantially interferes with the proper administration of the internal revenue laws."  *Id.* at *3.  Because Doonan served as WDA's CEO when the events took place, "WDA was also engaged in conduct subject to criminal penalty." *Id.*  Judge Torres further determined that Doonan's guilty plea and criminal conviction "constitute[d] estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."  *Id.* (quotations omitted).  She then

found that "[t]he same issues and facts that led to Doonan's conviction under 26 U.S.C. §§ 7206(2) and 7212(a) support civil liability under § 7407." *Id.*[3]

The Government now moves for summary judgment and seeks an order permanently enjoining Defendants from preparing tax returns and violating the internal revenue laws. *See* Dkt. 88; Motion.  Doonan opposes the motion, maintaining that he only "prepared honest and non-fraudulent tax returns."  Opposition at 16.  As noted, WDA still has not appeared in this case.

## II. Legal Standards

A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine factual dispute exists, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

Where, as here, the plaintiff is the moving party, it bears the initial burden to show the lack of a genuine dispute on each material element for the asserted claims. *Celotex Corp. v. Catrett*,

---

[3] The Government contends that "[t]he legal determinations by Judge Torres . . . are, at a minimum, 'entitled to a certain amount of deference' under the law of the case doctrine." Dkt. 89 ("Motion") at 9 n.6 (quoting *City of New York v. Gordon*, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015)).  While certain aspects of Judge Torres's opinion are instructive to the analysis here, "the law of the case doctrine is not typically applied in connection with preliminary determinations, such as a ruling on a motion for preliminary injunction." *Garten v. Hochman*, No. 08 Civ. 9425 (PGG), 2010 WL 2465479, at *3 n.1 (S.D.N.Y. June 16, 2010).  That is because "[a] preliminary determination of a likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992); *accord Rivera v. Mattingly*, No. 06 Civ. 7077 (TPG), 2011 WL 4344422, at *7 (S.D.N.Y. Sept. 12, 2011).  Thus, Judge Torres's opinion did not resolve the issues presented by the Government's motion for summary judgment pursuant to the law-of-the-case doctrine, nor does that opinion otherwise restrict Defendants from opposing the Government's motion. *Id.*

477 U.S. 317, 322-23 (1986).  If the moving party carries that burden, the non-moving party must then "designate specific facts showing that there is a genuine issue for trial."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

Doonan is proceeding *pro se*.  Typically, "[w]hen a *pro se* litigant is involved, the same standards for summary judgment apply, but the *pro se* litigant should be given special latitude in responding to a summary judgment motion."  *Roundtree v. New York City*, No. 15 Civ. 8198 (JPC), 2021 WL 4504471, at *4 (S.D.N.Y. Sept. 30, 2021) (quotations omitted).  But Doonan was a licensed attorney before being disbarred because of his conviction in the criminal case.  *See In re Doonan*, 66 N.Y.S.3d 6 (App. Div. 2017).  "[D]isbarred attorneys such as [Doonan]," are subject to the same rule as licensed attorneys proceeding *pro se*: "'a lawyer representing himself ordinarily receives no [special] solicitude at all.'"  *Pierce*, 649 F. App'x at 118 n.1 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010)).  The Court therefore "afford[s] no special solicitude to [Doonan] here" besides, as discussed above, exercising its discretion to consider Doonan's challenges to the evidentiary submissions.  *Id.*

Because WDA has not appeared or challenged the Government's motion for summary judgment, the Court treats the motion as unopposed as to WDA.  But "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  Thus, in considering the Government's motion against WDA, the Court has reviewed the entire record submitted to determine whether there are any genuine issues of material fact.

### III.  Discussion

The Government seeks a permanent injunction against Defendants under 26 U.S.C. §§ 7407, 7408, and 7402(a).  Sections 7407 and 7408 expressly "provide statutory conditions for equitable relief."  *Doonan*, 2020 WL 1659861, at *2; *accord United States v. Pugh*, 717 F. Supp. 2d 271, 285, 294 (E.D.N.Y. 2010).  Thus, "the traditional requirements for equitable relief need not be met."  *Pugh*, 717 F. Supp. 2d at 294.  Instead, the Court must look to the "statutory conditions for injunction relief" and may issue a permanent injunction if those conditions are met. *Sec. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975) (quotations omitted).  In contrast, section 7402(a) "authorizes injunctive relief, but does not provide 'statutory conditions.'"  *United States v. Broccolo*, No. 06 Civ. 2812 (KMK), 2006 WL 3690648, at *2 (S.D.N.Y. Dec. 13, 2006) (quoting *Mgmt. Dynamics, Inc.*, 515 F.2d at 807-08).  Because section 7402(a) does not provide the statutory conditions for relief, "[c]ourts in this Circuit hold that parties seeking an injunction under section 7402(a) must satisfy the traditional injunction factors."  *United States v. Azeez-Taiwo*, No. 15 Civ. 4225 (DLI) (ST), 2017 WL 4443471, at *4 (E.D.N.Y. Sept. 30, 2017).  The Court will address the Government's entitlement to a permanent injunction under each statutory provision in turn.

### A.    Injunctive Relief Under 26 U.S.C. § 7407

The Government first seeks summary judgment and a permanent injunction under 26 U.S.C. § 7407, which provides for injunctive relief against "any person who is a tax return preparer."  26 U.S.C. § 7407(a).  This section permits the Court to enjoin a tax preparer who, among other things, (1) "engaged in any conduct subject to penalty under [26 U.S.C. §§] 6694 or 6695" or "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws," and (2) "injunctive relief

is appropriate to prevent the recurrence of such conduct." 26 U.S.C. § 7407(b).  Section 6694(b), in turn, penalizes a tax return preparer who "willfully attempt[s] to understate tax liability on a return or claim or any reckless or intentional disregard of rules or regulations." *Pugh*, 717 F. Supp. 2d at 288.

To begin, the Government has shown that section 7407 authorizes an injunction.  There is no dispute that Defendants were tax preparers. *See, e.g.*, Opposition at 5 (claiming that Doonan "prepared honest, non-fraudulent tax returns" (capitalization changed)); Complaint ¶¶ 6-7; Pl. 56.1 Stmt. ¶ 2.  Doonan also pleaded guilty to, over multiple years, willfully aiding and helping prepare fraudulent or false documents in matters arising under the internal revenue laws, in violation of 26 U.S.C § 7206(2), and corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).  These convictions mean that Doonan continually and repeatedly engaged in criminal conduct that, first, is subject to penalty under 26 U.S.C. § 6694, and, second, hinders the proper administration of the internal revenue laws. *See Azeez-Taiwo*, 2017 WL 4443471, at *3 ("Defendant's conviction for willfully preparing false tax returns under 26 U.S.C. § 7206(2) demonstrates that he engaged in conduct subject to the penalties of section 6694.").  For one, section 7206(2) provides that any person who "[w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return . . . which is fraudulent or is false as to any material matter . . . shall be guilty of a felony."  And during his plea allocution, Doonan admitted that from 2009 to April 2013 he had "knowingly prepared and caused the preparation of filing federal false tax returns" that included "[w]holly fictitious, inflated itemized deductions and business expenses."  Plea Tr. at 17; *see also* Sentencing Tr. at 37 (Doonan admitting:  "And I did it.  And then I did it again.  I did it again.").

Doonan's admissions during his plea hearing also mean that the Government has shown that WDA likewise engaged in conduct subject to criminal penalty. Doonan served as WDA's CEO. *See, e.g.*, Pl. 56.1 Stmt. 1; *see also* Complaint ¶ 7. Doonan therefore imputed his criminal liability to WDA: "as a general rule a corporation is liable for the criminal acts of its employees if done on its behalf and within the scope of the employees' authority." *United States v. Demauro*, 581 F.2d 50, 53 (2d Cir. 1978).

As noted earlier, Doonan resists that he meets the requirements for an injunction under section 7407 by claiming that he was an "honest" tax preparer who prepared "non-fraudulent tax returns." Opposition at 16. But Doonan cannot now make that argument. Again, it is "well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *Podell*, 572 F.2d at 35. As Judge Torres correctly observed when issuing the Preliminary Injunction, "[t]he same issues and facts that led to Doonan's conviction under 26 U.S.C. §§ 7206(2) and 7212(a) support civil liability under § 7407." *Doonan*, 2020 WL 1659861, at *3.

Turning to whether "injunctive relief is appropriate to prevent the recurrence of such conduct," 26 U.S.C. § 7407(b), "[t]he Second Circuit has articulated several factors for consideration in determining whether future infractions are probable: '(1) the degree of scienter involved, (2) the isolated or recurring nature of the fraudulent activity, (3) the defendant's appreciation of his wrongdoing, and (4) the defendant's opportunities to commit future violations,'" *Azeez-Taiwo*, 2017 WL 4443471, at *3 (quoting *Sec. & Exh. Comm'n v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 100 (2d Cir. 1978)). And under section 7407(b), when "the court finds that a tax return preparer is continually or repeatedly engaging in conduct

subject to penalty under . . . §§ 6694 or 6695 and that an injunction prohibiting such conduct would be insufficient to prevent further interference with the administration of the internal revenue laws, [section] 7407 authorizes the court to enjoin such person from acting as a tax return preparer." *Pugh*, 717 F. Supp. 2d at 285 (quotations omitted).  After considering these factors, the Court finds it appropriate to issue a permanent injunction that would enjoin Defendants from engaging in future tax violations and acting as tax preparers.

First, and as discussed, Doonan was convicted of engaging in willful conduct.  *See* Plea Tr. at 17; Information at 4; Pl. 56.1 Stmt. ¶ 8.  Second, Defendants admitted to preparing fraudulent tax returns between 2009 and 2013 and the evidence shows that this scheme may have continued until at least 2016.  Plea Tr. at 16-17; Sentencing Tr. at 37; Dixon Decl. ¶ 23; Pl. 56.1 Stmt. ¶¶ 8-9, 24-26.  This was hardly an isolated violation of the tax laws.  Third, Doonan does not seem to appreciate the wrongful nature of his past conduct, evidenced by him continuing to "dispute[] the conduct underlying his conviction." *Azeez-Taiwo*, 2017 WL 4443471, at *3.  For example, in opposing the Government's motion for summary judgment, Doonan claims that the tax returns he prepared that led to his criminal conviction "were honest, well documented, professional, non-fraudulent, containing non-frivolous deductions."  Opposition at 16.  And during the preliminary injunction hearing before Judge Torres, "Doonan repeatedly insisted . . . that there were 'two sides' to the story." *Doonan*, 2020 WL 1659861, at *4; *see also* Dkt. 7 at 5 (Doonan claiming in his Answer that he was "an honest, law abiding tax attorney[,] [w]ho prepared thousands of tax returns in an honest law abiding way"); Jacob Decl., Exh. A at 8:22-23 (Doonan asserting at a court conference that he "has prepared honest, nonfraudulent tax returns since 1969").  Fourth, absent an injunction, there is no reason to believe that Defendants will not have the opportunity to commit future violations.

Thus, the Court grants summary judgment in favor of the Government and concludes that a permanent injunction is warranted. And given that Defendants continually and repeatedly engaged in fraudulent conduct over many years and that Doonan (who, again, is the CEO and operator of WDA) "maintains that the conduct underlying his conviction was not against the law[,] . . . the Court finds that a narrower injunction is not likely [to] prevent Defendant[s] from engaging in conduct prohibited by [section] 7407, and, therefore, enjoins [them] from acting as . . . tax preparer[s]" and from violating the tax law. *Azeez-Taiwo*, 2017 WL 4443471, at *4.

## B.   Injunctive Relief Under 26 U.S.C. § 7408

The Government also seeks a permanent injunction under 26 U.S.C. § 7408 based on the same conduct supporting the injunction under 26 U.S.C. § 7407. Motion at 18-20. Among other things, section 7408 permits a court to enjoin a person from conduct subject to penalty under 26 U.S.C. § 6701, if "(1) the defendant has engaged in conduct subject to penalty under [section] . . . 6701; and (2) 'injunctive relief is appropriate to prevent recurrence' of the violative conduct." *Pugh*, 717 F. Supp. 2d at 293 (quoting 26 U.S.C. § 7408(b)). Section 6701, in turn, imposes penalties on any person:

> (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
>
> (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
>
> (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person.

26 U.S.C. § 6701(a).

Much like the analysis for section 7407, Defendants violated section 6701 by preparing tax returns with inflated and fictitious deductions to reduce their clients' tax liability and inflate their tax refunds. Plea Tr. at 17; Information at 6; Pl. 56.1 Stmt. ¶¶ 5, 8. As to whether an injunction

under section 7408 is warranted, courts consider the same factors as in the section 7407 analysis, as well as "(1) the gravity of the harm caused by the offense; [and] (2) the extent of the defendant's participation." *Pugh*, 717 F. Supp. 2d at 298 (quotations omitted).  These two additional factors also counsel in favor of granting a permanent injunction under section 7408.

First, as Judge Torres noted, "the harm caused by Defendants' tax return fraud is significant." *Doonan*, 2020 WL 1659861, at *4.  Defendants' customers had to pay fees for Defendants to prepare tax returns that understated their income tax liabilities.  Dixon Decl. ¶ 32. And because of Defendants' conduct, many of these customers could have faced IRS penalties. *Id.*; Pl. 56.1 Stmt. ¶ 31.  Besides the customers, the Government "has been harmed both by lost revenue and by the expense of investigating defendants' tax preparation services and identifying, auditing, and collecting taxes the defendants have assisted their customers in evading." *Pugh*, 717 F. Supp. 2d at 298.  The Government has shown that Defendants caused over a million dollars in lost revenue and that it may not be possible for the Government to fully identify and recover all its lost revenue.  Sentencing Tr. at 11; Dixon Decl. ¶¶ 31, 33; Pl. 56.1 Stmt. ¶¶ 12, 29.  Second, Defendants directly participated in the scheme.  While operating WDA, Doonan prepared, reviewed, and filed the fraudulent tax returns on behalf of his clients.  Plea Tr. at 17; Pl. 56.1 Stmt. ¶ 8.

Thus, because all the relevant factors strongly support a permanent injunction, the Court also grants a permanent injunction under section 7408 prohibiting Defendants from engaging in conduct that violates section 6701.

## C.    Injunctive Relief Under 26 U.S.C. § 7402(a)

Lastly, the Government seeks an injunction under section 7402(a).  This "catch-all" provision "permits district courts to issue orders of injunction and to render such judgments and

decrees as may be necessary or appropriate to the enforcement of the internal revenue laws." *Azeez-Taiwo*, 2017 WL 4443471, at \*4 (quotations and alterations omitted).  As noted above, section 7402(a) does not articulate statutory conditions for injunctive relief, and therefore courts consider the traditional equitable factors that govern injunctive relief.  *See id.*

Under those traditional equitable factors, a permanent injunction is appropriate when the movant can show success on the merits and (1) "that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010) (quotations omitted).  As a threshold matter, the Government has shown success on the merits by virtue of Doonan's convictions under 26 U.S.C. §§ 7206(2) and 7212(a), which as discussed, were in violation of 26 U.S.C. §§ 6694 and 6701 and entitle the Government to a permanent injunction as to Defendants.  *See Pugh*, 717 F. Supp. 2d at 301 (holding that establishing conduct that violates sections 6694 and 6701 shows success on the merits); *Azeez-Taiwo*, 2017 WL 4443471, at \*5 (same).  The Court finds that the Government has met each of the remaining requirements for traditional injunctive relief.

First, the Government has shown "irreparable harm in the lost tax revenue and significant resources used in uncovering and addressing Defendants' false tax returns."  *Azeez-Taiwo*, 2017 WL 4443471, at \*5.  Second, legal remedies would be insufficient to compensate the Government for that injury.  If the Court did not enjoin Defendants, "the Government will be forced to further investigate and address their conduct and will be further harmed by additional fraudulent tax filings with understated tax liability."  *Id.*  And given Defendants' established pattern of inflating refunds by fabricating and exaggerating deductions for unreimbursed employee expenses, "the only way

to prevent future harm to the Government and [D]efendants' customers . . . is to enjoin [Defendants] permanently from preparing tax returns." *Pugh*, 717 F. Supp. 2d at 302; *accord Azeez-Taiwo*, 2017 WL 4443471, at *5 ("Given Defendants' established pattern of fabricated and exaggerated deductions for unreimbursed employ[ee] expenses and charitable contributions that resulted in inflated refunds, the Court finds that there is no remedy at law that would prevent Defendants from further engaging in this conduct." (cleaned up)).

Third, the hardships tip towards granting a permanent injunction. A permanent injunction would indeed deny Defendants the ability to make a living as tax preparers. But Defendants' "harm is outweighed by the harm that would be imposed on the Government and Defendants' clients should Defendants' conduct continue absent a permanent injunction." *Azeez-Taiwo*, 2017 WL 4443471, at *5; *see also Pugh*, 717 F. Supp. 2d at 302-03 (recognizing that the defendants would "be denied the right to earn a livelihood," but still granting a permanent injunction because of the harm it will prevent).

Finally, a permanent injunction would serve the public interest. The permanent injunction will prevent taxpayers from having inaccurate and "fraudulent returns filed in their name that would subject them to liability for overdue taxes, penalties and interest." *Pugh*, 717 F. Supp. 2d at 302. In that same vein, it would prevent Defendants from helping people file fraudulent tax returns to "avoid[] lawful income taxes." *Id.* (quotations omitted). At bottom, a permanent injunction will "conserve IRS resources in investigating fraudulent conduct and prevent conduct that undermines public confidence in the fairness of the federal tax system." *Azeez-Taiwo*, 2017 WL 4443471, at *5.

Thus, the Court will also permanently enjoin Defendants under section 7402(a) from acting as a tax return preparer.

## IV.  Conclusion

For all these reasons given, the Government's motion for summary judgment is granted. The Court finds that Defendants repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6701 and that injunctive relief pursuant to 26 U.S.C. §§ 7407 and 7408 is appropriate to prevent recurrence of such illegal conduct.  The Court also finds that Defendants repeatedly engaged in conduct that interfered with the enforcement of the internal revenue laws and that injunctive relief against them is appropriate to prevent recurrence of such conduct pursuant to 26 U.S.C. § 7402(a) and the Court's inherent authority.  The Court therefore permanently enjoins Defendants under 26 U.S.C. §§ 7402(a), 7407, and 7408 from directly or indirectly:

1. Preparing or filing, or assisting in preparing or filing, any federal tax return, amended return, or other federal tax documents or form for any person other than Doonan (or Doonan and his spouse if filing jointly) or for any entity other than WDA;

2. Representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

3. Employing any person who prepares or files, or assists in preparing or filing, any federal tax return, amended return, or other federal tax documents or forms for any person other than Doonan (or Doonan and his spouse if filing jointly) or for any entity other than WDA;

4. Engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6701;

5. Further promoting false tax schemes that violate the internal revenue laws;

6. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number or an Electronic Filing Identification Number;

7.  Having an ownership interest in an entity in the business of preparing federal tax returns or other federal tax documents or forms for other persons or representing any person before the IRS;

8.  Commercially advertising their own tax return preparation services through any medium, including the internet and social media; and

9.  Engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue.

The Court will also require Doonan, within 75 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that he has received a copy of the Court's order and has complied with its terms.  The Court also authorizes the United States to take post-judgment discovery to monitor and ensure compliance with the Court's injunction against Defendants.

The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated: March 29, 2022
       New York, New York

_____
         JOHN P. CRONAN
     United States District Judge

22